IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Annalie R., | ) |
|       Plaintiff, | ) ) ) |
| v. | ) Case No.: 24-cv-50502 ) ) Magistrate Judge Margaret J. Schneider |
| Frank J. Bisignano, Commissioner of Social Security, | ) ) ) ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

     Plaintiff, Annalie R., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

     On May 17, 2023, Annalie R. ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning on January 13, 2021. R. 18. Her application was denied initially on June 7, 2023, and upon reconsideration on July 31, 2023. Plaintiff filed a written request for a hearing on August 13, 2023. *Id*. Administrative Law Judge ("ALJ") James MacDonald held a telephonic hearing on January 11, 2024. The ALJ advised Plaintiff of her right to representation, but she chose to appear and testify without the assistance of counsel or other representation. After discovering that Plaintiff was participating in the hearing while a passenger on a public bus, the ALJ adjourned the hearing. *Id*. A supplemental hearing was held on June 4, 2024. *Id*. Again, after being advised of her right to representation at the hearing, Plaintiff chose to appear and testify without the assistance of counsel or other representation. *Id*. At the hearing, an impartial vocational expert ("VE"), Kimberly Eisenhuth, also appeared and testified. *Id*.

     On June 28, 2024, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 18-31. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-7. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [16]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [18] and the Commissioner's motion

1

for summary judgment and response to Plaintiff's motion [24]. Plaintiff also filed a reply brief [27].

### B. The ALJ's Decision

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 13, 2021, through her date late insured of June 30, 2022. R. 21. At step two, the ALJ found that Plaintiff had the following severe impairments: obsessive compulsive disorder (OCD), major depressive disorder, generalized anxiety disorder, and narcolepsy without cataplexy. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 22-23.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can carry out more than simple, but less than complex tasks within normal break periods; she cannot work with the general public; she must have goal-oriented work to reduction interactions with supervisors and cannot perform tandem tasks; Plaintiff cannot have changes in a routine work setting; she cannot perform work with unclean surfaces and cannot work with oil, fluids, or grease; and Plaintiff cannot perform work requiring sweeping or mopping. R. 23-29. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 29-30. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 30-31. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from the alleged onset date of January 13, 2021, through date last insured of June 30, 2022. R. 31.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*

*v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred (1) by failing to develop a full and fair hearing; and (2) in evaluating the severity of Plaintiff's anxiety and her subjective symptoms. Plaintiff further argues that the evidence submitted to the Appeals Council was new and material, requiring remand. As detailed below, the Court finds that the ALJ properly developed the record, properly evaluated the severity of Plaintiff's anxiety and subjective symptoms, and that the evidence submitted to the Appeals Council was not new and material. Therefore, the Court affirms the Commissioner's decision.

### **Full and fair hearing**

First Plaintiff argues that the ALJ failed to develop a full and fair hearing. In support of this argument, Plaintiff complains that the ALJ's enhanced duties at a hearing with an unrepresented claimant were not adequately met. In conjunction with this, Plaintiff argues the extent of her OCD and narcolepsy were not fully developed, and the ALJ improperly failed to inquire into Plaintiff's Department of Veteran Affairs ("VA") disability rating.

It is well-settled that "[a]n ALJ in a benefits hearing 'has a duty to develop a full and fair record.'" *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023) (quoting *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)). Additionally, this duty is enhanced when a claimant is not represented at the hearing. *Id*. "[W]hen a claimant appears pro se, the ALJ, under the heightened duty, must 'probe[] the claimant for possible disabilities and uncover[] all of the relevant evidence.'" *Id*. (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019)). However, "a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly." *Simons v. Saul*, 817 Fed.Appx. 227, 232 (7th Cir. 2020) (citations and quotations omitted). Here, Plaintiff argues that she did not fully understand the hearing, "at least the vocational portion of her case, seeking clarification." [18], 5; that the extent of her OCD and narcolepsy was not fully developed; and that the ALJ did not inquire into her VA Compensation and Pension ("C&P") evaluation and rating.

As noted above, the ALJ began a hearing with Plaintiff in January 2024. While that hearing was terminated due to Plaintiff improperly presenting herself at the hearing while riding in a public bus, the ALJ did set forth Plaintiff's right to proceed with representation – either with an attorney or with a non-attorney representative. The ALJ explained the benefits of having a representative present during the hearing and also the standard fee arrangement of such representation. The ALJ continued: "And so, do you understand your rights to representation as I've explained them?" Plaintiff responded: "Yes, Your Honor." The ALJ then questioned: "Okay. And then do you want to proceed today without a representative or do you want to postpone this hearing and try to find a representative?" Plaintiff stated: "I do not have a representative and I'm okay with the hearing without a representative." R. 67-68. At Plaintiff's June 2024 hearing, the ALJ advised Plaintiff again and in the same manner of her right to representation. The ALJ then asked: "So do you understand your rights to representation?" Plaintiff responded: "I do, Your Honor." The ALJ then questioned: "And that you wish to proceed today without a representative or do you want to postpone it to find a representative?" Plaintiff stated: "I do want to proceed with [*sic*] unrepresented today." R. 39-40. The Court finds that Plaintiff was more than adequately advised of her right to counsel or other representation at her hearing and she freely and voluntarily waived that right.

In support of Plaintiff's position that she did not receive a full and fair hearing due to the ALJ's failure to adequately address her OCD and narcolepsy, Plaintiff stresses that the ALJ did not consider (nor did he request be included in the file) Plaintiff's 2022 C&P exam results.[1] A C&P exam is a tool used by the VA to assist them in determining whether a service member has a service-connected disability and helps rate that disability if one is determined. This rating determines how much disability compensation a service member will receive.[2] Plaintiff argues it is not only her C&P rating that is important (Plaintiff received a rating of 100% and testified she receives VA benefits. *See* [18], p. 5; R. 47), but the "objective examination and findings for the rating." [18], p. 5. Plaintiff argues that the ALJ ignored the fact that 6-7 hours of her day were consumed by OCD behaviors, she experienced motor ticks, an anxious mood, and wore gloves during her C&P examination. As to Plaintiff's narcolepsy, Plaintiff argues the C&P exam revealed daily naps, excessive daytime sleepiness, sleep attacks, and sleep onset hallucinations. [18], pp. 6-7; R. 1250-59. Plaintiff takes the position that this information – contained in the 2022 C&P evaluation – was highly relevant and probative to the ALJ's findings.

First, and importantly, the Social Security Administration regulations provide the Court with guidance on how an ALJ should treat disability decisions by other agencies and entities:

> "Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about

---

[1] Plaintiff's 2022 C&P evaluation was submitted to the Appeals Council as additional evidence and has been made part of this record. *See* [13-1].
[2] *See* VA Claim Exam (C&P Exam) | Veterans Affairs. Last visited November 17, 2025.

whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)."

§ 404.1504 (Decisions by other governmental agencies and nongovernmental entities).

The regulation makes clear that the ALJ is not bound to provide any analysis of the VA's disability determination in making his findings. All that the ALJ is to consider is the "supporting evidence" that is part of the other agency's decision. Second, the record reflects the ALJ did consider the supporting evidence in his decision. The hearing transcript reveals that the ALJ adequately addressed with Plaintiff her medications – dosage, usage, side effects, changes, timeframe of use – for the OCD, headaches, and narcolepsy, R. 43-45; her OCD behaviors ("What are the rituals that you find yourself having?" R. 46); memory issues, including period of time experiencing problems, R. 47-48; difficulties dealing with people, R. 48; attention and concentration, R. 48-49; personal hygiene, R. 49; ability to drive, R. 49-50; ability to go to school, R. 50; and ability to travel, R. 51-52. At the hearing, the ALJ also asked Plaintiff opened-ended questions about her condition: "Are there any other activities that you used to do but because of your limitations you no longer do?" R. 49; "What do you think would be the biggest issue you would have in working?" R. 50; "And is there anything else you'd like to talk about with respect to your ability to work or not work?" R. 52. The ALJ provided Plaintiff with the opportunity to testify to all of her mental impairments and was guided by the ALJ with both specific and open-ended questions allowing Plaintiff to provide the supporting evidence needed to aid the ALJ in his findings. The ALJ further assisted Plaintiff during the VE's testimony. The ALJ explained that he presented hypotheticals to the VE based on Plaintiff's record regarding work-related matters such as on-task work, absenteeism, working with clean surfaces, and working with others who touch the same surfaces. Based on Plaintiff's questions and need for clarification, the ALJ asked follow-up questions to the VE. R. 58-62.

Additionally, the ALJ's decision sets out a thorough review of Plaintiff's testimony, medical records, and medical opinions. The ALJ spends six pages in his decision in support of the RFC outlining Plaintiff's medical records from July 2020 through August 2023. The ALJ includes detailed information on Plaintiff's OCD and narcolepsy history (through Plaintiff's reports as well as medical records), medications, and treatment. These details include notes from psychologists, mental health consultations, objective examinations, neurology consults, therapists, and objective findings. The decision further includes comprehensive details on the medical opinions in this case. R. 24-29. The Court finds, consistent with the Social Security Administration regulations, that the ALJ adequately and appropriately considered the supporting evidence in the VA's evaluation. Additionally, the ALJ developed a full and fair hearing and considered Plaintiff's *pro se* status throughout.

**<u>Severity of Plaintiff's anxiety & subjective symptoms</u>**

Next, Plaintiff argues that the ALJ erred in evaluating the severity of Plaintiff's anxiety. Essentially, Plaintiff complains that the ALJ overlooked certain observations made at her mental health visits and "cherry picked" records from Plaintiff's "good days," and ignored her "bad days."

An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence, so long [as] he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) (citations omitted). In support of her position that the ALJ chose favorable records over unfavorable, Plaintiff notes that records indicated that she was highly anxious, had a possible facial tic, her OCD level of impairment was "severe," her thought process was distractable, and she was in therapy for suicide prevention. As to agency opinions. Plaintiff states that examinations were not normal and there existed no evidence that the ALJ considered these deficits and how they would impact Plaintiff's ability to work. The Court disagrees that the ALJ "cherry picked" from the medical records and overlooked the severity of Plaintiff's anxiety. The Court's review of the ALJ decision shows that the ALJ repeatedly noted and considered Plaintiff's anxiety symptoms and treatment, from Plaintiff's reports ("…claimant's record included depressed mood, anxiety, suspiciousness, panic attacks that occur weekly or less often." R. 25), to her medical records ("…the claimant had a new patient visit with a psychologist and said that she had been 'okay' but still had anxiety and OCD symptoms." R. 26; "…the claimant met with a new mental health prescriber who increased her fluvoxamine and modafinil dosages. The claimant started cognitive behavioral therapy for chronic suicidal ideation." R. 27), to medical opinions ("…[claimant's] impairments would cause an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." R. 28). Moreover, the Court does not overlook the role of this court – that we evaluate the ALJ's decision to determine if it supported by substantial evidence and "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.'" *Casten v. O'Malley*, No. 24-1583, 2024 WL 4891188, at *2 (7th Cir. 2024) (quoting *Warnell*, 97 F.4th at 1052-53.). Additionally, the RFC set out in the ALJ's decision takes into consideration Plaintiff's anxiety, noting especially the nonexertional limitations of carrying out more than simple, but less than complex tasks within normal break periods, not working with the general public, reduced interactions with supervisors, and no changes in a routine work setting. *See* R. 23-24. The Court finds that the ALJ properly considered Plaintiff's anxiety in his decision.

Additionally, Plaintiff argues that the ALJ erred in evaluating her subjective symptoms. ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*.

In addition to the manner in which the ALJ addressed Plaintiff's OCD, narcolepsy, and headaches, Plaintiff complains of the way the ALJ handled Plaintiff's issues surrounding travel and doctor's visits. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. The regulations instruct ALJs to consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms; (2) treatment and efficacy; (3) return to gainful activity; (4) work during disability period; (5) daily activities; and (6) statements inconsistent with the record." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Also, the court will overturn an ALJ's evaluation of a claimant's subjective symptoms only under a finding that it is "patently wrong." *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025). The Court has made clear, *supra*, that the ALJ thoroughly explored Plaintiff's symptoms and concerns at the hearing and adequately considered Plaintiff's testimony as to her medical condition, including the limiting effects of her symptoms and treatment, in his decision.

Despite Plaintiff's testimony and reports to providers, the ALJ found many of Plaintiff's examinations and evaluations unremarkable – she progressed with management of her conditions, managed relationships, traveled on public transportation, and used medications when she believed she needed to, but also was not always compliant with medications as directed by her providers. The ALJ also inquired about Plaintiff's rituals and habits driving her OCD symptoms. As to her severe narcolepsy condition, Plaintiff argues the ALJ failed to adequately consider her symptoms. Plaintiff points to documented accounts of fatigue and the need to sleep during the day. However, the ALJ's decision addresses both Plaintiff's subjective narcolepsy symptoms as well as the medical evidence and reports surrounding this condition. The decision acknowledges that Plaintiff reported issues driving, excessive sleepiness, tiredness, and fatigue. Nevertheless, the records reflected that Plaintiff did not suffer from sleep apnea, she did not suffer from cataplexy or sleep paralysis, and in August 2020, had only 0 to 1 narcoleptic episodes over the prior six months. R. 25. In December 2022, while Plaintiff reported daytime fatigue, she further reported she was able to get to sleep and stay asleep without issue and slept 6 to 8 hours per night. R. 27. In July 2023, Plaintiff reported discontinuing her narcolepsy medication. *Id*. The ALJ properly took into consideration Plaintiff's subjective narcolepsy symptoms as well as the medical evidence in crafting Plaintiff's RFC. The Court will not reweigh the evidence and cannot say that the ALJ was "patently wrong" in his evaluation of Plaintiff's subjective symptoms.

**New and material evidence**

Finally, Plaintiff argues that remand is necessary because evidence submitted to the Appeals Council was "new and material." Under the Social Security Administration regulations, the Appeals Council will review a case if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). If the Appeals Council denies review because new evidence is "'non-qualifying under the regulation,' the Court conducts a de novo review," but if the Appeals Council found the new evidence qualifying but "denied review because the ALJ's decision was not contrary to the weight of the evidence, then the Council's decision not to engage in plenary review is discretionary and unreviewable." *Davis v. Commissioner*, No. 20 CV 303, 2021 WL 2451908, at *4 (N.D. Ind. June 16, 2021). Courts in the Seventh Circuit are split as to whether the Appeals Council finding

7

that additional evidence "does not show a reasonable probability that it would change the outcome of the decision," is a "legal determination of materiality or a discretionary weighing of the evidence." *Id*. *Compare Colleen C. o/b/o Daniel I. v. Saul*, No. 18 CV 1838, 2019 WL 3986077, at *2–3 (N.D. Ill. Aug. 23, 2019) (interpreting this language to mean the Appeals Council rejected the new evidence as non-qualifying and therefore de novo review was appropriate); *with Jandt v. Saul*, No. 18 CV 737, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019) (finding denial using this language discretionary and unreviewable).

In this case, Plaintiff takes specific issue with the Appeals Council's conclusion that disability benefits questionnaires from Matthew Landstrom, Psy.D. and Abigail Degner PA-C, from February 2022 (the 2022 C&P evaluations, as noted above), did "not show a reasonable probability that it would change the outcome of the decision." R. 2. Given the split in the Seventh Circuit, this Court will review the Appeals Council's conclusion de novo. On the record presented, this Court is satisfied that the Appeals Council correctly determined that the disability benefits questionnaires would not have changed the outcome of the ALJ's decision. As discussed, the information contained in the VA's 2022 C&P evaluation of Plaintiff was not exclusive or un-reviewed evidence of Plaintiff's conditions. The developed record in this case addressed the issues presented in the 2022 C&P. Plaintiff points to the evaluation containing observations of Plaintiff's glove and hand sanitizer use, yet the ALJ questioned Plaintiff as to her glove-wearing use and the ALJ's decision reflects Plaintiff's excessive handwashing. Following its review, the Court concludes that there is no reasonable probability that Plaintiff's new evidence would change the outcome of the decision denying him disability benefits under the Social Security Act.

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date: November 17, 2025                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge